UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

MARY F. DUNN-MASON,                           Case No. 11-13419

        Plaintiff,                              Stephen J. Murphy, III
v.                                            United States District Judge

JP MORGAN CHASE BANK NATIONAL                 Michael Hluchaniuk
ASSOCIATION and TROTT & TROTT, P.C. ,         United States Magistrate Judge

        Defendants.
_____/

## REPORT AND RECOMMENDATION
## JP MORGAN CHASE BANK N.A.'S MOTION TO DISMISS
## PLAINTIFF'S SECOND AMENDED COMPLAINT (Dkt. 107)

## I.    PROCEDURAL HISTORY

Plaintiff filed a complaint relating to wrongful foreclosure on August 5,

2011, against defendants JP Morgan Chase, NA ("Chase") and the law firm of

Trott & Trott, P.C. ("Trott").  (Dkt. 1).  On August 19, 2011, this matter was

referred to the undersigned for all pretrial purposes.  (Dkt. 5).  Plaintiff filed an

amended complaint as of right on August 22, 2011.  (Dkt. 8).  On September 12,

2011, Chase moved to dismiss the first amended complaint.  (Dkt. 24).  Plaintiff

subsequently filed a motion for leave to amend the complaint a second time.  (Dkt.

38).  On May 7, 2012, the Court granted plaintiff's motion for leave to amend her

complaint and terminated Chase's motion to dismiss as moot.  (Dkt. 61).[1]  Plaintiff

filed her second amended complaint on May 24, 2012.  (Dkt. 63).

On May 10, 2013, defendant Chase filed a motion to dismiss plaintiff's

second amended complaint.  (Dkt. 107).[2]  Plaintiff filed her response in opposition

to Chase's motion to dismiss on May 21, 2013 (Dkt. 110), and, on June 10, 2013,

plaintiff filed a second response to the motion to dismiss (in response to the

Court's order (Dkt. 109) requiring a response to the motion to dismiss).  (Dkt.

113).  Also on June 10, 2013, Chase filed its reply brief in support of its motion to

dismiss.  (Dkt. 112).  Plaintiff filed a response to Chase's reply brief on June 17,

2013.  (Dkt. 115).  This matter is now ready for report and recommendation.

---

[1] Defendant Trott had filed a motion to dismiss on September 1, 2011, and the Court also terminated Trott's motion to dismiss as moot.  (Dkt. 61).

[2] On June 1, 2012, Chase filed a motion for extension of time to file its answer (Dkt. 66), and then filed a motion to stay proceedings on June 11, 2012.  (Dkt. 67).  On October 24, 2012, this Court entered an order granting defendant Chase's motion to stay proceedings in this case pending a decision by the Michigan Supreme Court in *Kim v. JPMorgan Chase*, 295 Mich. App. 200 (2012), *leave granted* 491 Mich. 915 (May 9, 2012).  (Dkt. 83).  The Michigan Supreme Court issued its decision in *Kim* on December 21, 2012.  *See Kim v. JPMorgan Chase, N.A.*, 493 Mich. 98 (2012).  Based on the issuance of that ruling, this Court issued an order on January 8, 2013, lifting the stay of proceedings and directing defendant Chase to file an answer or otherwise respond to plaintiff's amended complaint by January 18, 2013.  (Dkt. 92).  JP Morgan Chase subsequently filed a motion for reconsideration of the Michigan Supreme Court's decision in *Kim* on January 11, 2013 and defendant Chase filed a motion to reinstate the stay of proceedings in this case pending the Michigan Supreme Court's ruling on JPMorgan Chase's motion for reconsideration of *Kim v. JPMorgan Chase*, 493 Mich. 98 (2012).  On March 22, 2013, this Court entered an order reinstating the stay of proceedings pending a final decision by the Michigan Supreme Court in the *Kim* case.  (Dkt. 104).  On April 19, 2013, following the Michigan Supreme Court's denial of the motion for reconsideration, this Court entered an order lifting the stay and ordering defendant Chase to file an answer or otherwise respond to plaintiff's amended complaint by May 10, 2013.  (Dkt. 106).  Defendant Chase thus timely filed its motion to dismiss plaintiff's second amended complaint on May 10, 2013.  (Dkt. 107).

For the reasons set forth below, the undersigned **RECOMMENDS** that defendant Chase's motion to dismiss be **GRANTED** and that plaintiff's second amended complaint against Chase be dismissed with prejudice.

## II.   FACTUAL BACKGROUND[3]

On February 7, 2005, plaintiff and her husband, Wendell Mason, accepted a $256,000.00 loan from Washington Mutual Bank, FA ("WaMu"), and in exchange executed a promissory note secured by a mortgage on real property commonly known as 26233 Dundalk St., Farmington Hills, MI 48334 (the "Property").  (Dkt. 63, § V; Dkt. 107; Dkt. 24-3,4).  This Mortgage was recorded by the Oakland County Register of Deeds on March 15, 2005 at Liber 70618, Pages 204-229, Oakland County Records.  (Dkt. 24-4).  WaMu was subsequently closed by the Office of Thrift Supervision in September 2008, and the Federal Deposit Insurance Corporation ("FDIC") was appointed as receiver for WaMu's loans and other assets.  (Dkt. 63, § V; Dkt. 107; Dkt. 24-5).  Chase purchased certain assets and liabilities of WaMu from the FDIC as receiver and the FDIC immediately transferred WaMu's assets to Chase pursuant to a Purchase and Assumption Agreement ("Purchase Agreement").  (Dkt. 63 V; Dkt. 107; Dkt. 24-6).  The Purchase Agreement shows that all Loans were among the assets that Chase

---

[3] Because plaintiff's complaint is relatively sparse concerning the facts underlying this matter, many of the facts herein come from documents attached to defendant's motion to dismiss (Dkt. 24), which under the circumstances here are considered part of the pleadings the Court may consider on a motion to dismiss.  *See* Standard of Review *infra*.

3

purchased.  (Dkt. 63; Dkt. 107; Dkt. 24-6).  Chase thus was the investor for plaintiff's Mortgage loan and Chase Home Finance LLC was the servicer of the Mortgage.  (Dkt. 63, Ex. B).

After April 1, 2010, plaintiff defaulted on the loan and Chase commenced foreclosure proceedings.  (Dkt. 63 V & Ex. F; Dkt. 107).  The sheriff's sale of the subject property took place on February 8, 2011, and Chase purchased the Property.  (Dkt. 63, Ex. P; Dkt. 107; Dkt. 24-7).  Plaintiff's statutory right to redeem the Property expired on August 8, 2011.  (*Id.*).  Plaintiff did not make any attempt to redeem the Property, but filed this action against Chase and Trott on August 5, 2011, three days before the expiration of the statutory redemption period.  (Dkt. 1).  Plaintiff asserts five causes of action against defendants Chase and Trott: (1) Count I - "For Relief Against Wrongful Foreclosure;" (2) Count II - "For Relief Against Tortuous [sic] Violation of Statute Real Estate Settlement Procedure Act" ("RESPA"); (3) Count III - "For Relief Against Tortuous [sic] Violation of the Fair Debt Collection Practices Act" ("FDCPA"); (4) Count IV - "For Relief Against Tortuous [sic] Violation of Statute COL 18 USC § 242, § 245, 42 USC § 1983, MCL 600.3204(1)(d), MCL 600.3216, MCL 600.3204(3);" and (5) Count V - For Relief Against Tortuous [sic] Violation of 15 U.S.C. 1611(1)." (Dkt. 63).

4

## III.   ANALYSIS AND CONCLUSIONS

### A.   Standard of Review

#### 1.   Rule 12(b)(1)

Pursuant to Rule 12(b)(1), dismissal of an action is appropriate when a court does not enjoy subject matter jurisdiction.  "A Rule 12(b)(1) motion can either attack the claim of jurisdiction on its face, in which case all allegations of the plaintiff must be considered as true, or it can attack the factual basis for jurisdiction, in which case the trial court must weigh the evidence." *Abbott v. Michigan*, 474 F.3d 324, 328 (6th Cir. 2007) (citation omitted).  Having invoked the jurisdiction of the federal courts, "the plaintiff bears the burden of proving that jurisdiction exists." *Id.*  Thus, when evaluating a motion to dismiss pursuant to Rule 12(b)(1), the United States Court of Appeals for the Sixth Circuit has instructed:

> In reviewing a 12(b)(1) motion, the court may consider evidence outside the pleadings to resolve factual disputes concerning jurisdiction, and both parties are free to supplement the record by affidavits.  However, where a defendant argues that the plaintiff has not alleged sufficient facts in her complaint to create subject matter jurisdiction, the trial court takes the allegations in the complaint as true.

*Nichols v. Muskingum College*, 318 F.3d 674, 677 (6th Cir. 2003) (internal citations omitted).

#### 2.   Rule 12(b)(6)

5

Federal Rule of Civil Procedure 12(b)(6) provides for the dismissal of a case where the complaint fails to state a claim upon which relief can be granted. When reviewing a motion to dismiss under Rule 12(b)(6), a court must "construe the complaint in the light most favorable to the plaintiff, accept its allegations as true, and draw all reasonable inferences in favor of the plaintiff." *Directv, Inc. v. Treesh*, 487 F.3d 471, 476 (6th Cir. 2007). But the court "need not accept as true legal conclusions or unwarranted factual inferences." *Id.* (quoting *Gregory v. Shelby Cnty. Tenn.*, 220 F.3d 433, 446 (6th Cir. 2000)). "[L]egal conclusions masquerading as factual allegations will not suffice." *Eidson v. State of Tenn., Dep't of Children's Servs.*, 510 F.3d 631, 634 (6th Cir. 2007).

In *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544 (2007), the Supreme Court explained that "a plaintiff's obligation to provide the 'grounds' of his 'entitle[ment] to relief' requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do. Factual allegations must be enough to raise a right to relief above the speculative level. . . ." *Id.* at 555 (internal citations omitted). Dismissal is appropriate if the plaintiff has failed to offer sufficient factual allegations that make the asserted claim plausible on its face. *Id.* at 570. The Supreme Court clarified the concept of "plausibility" in *Ashcroft v. Iqbal*, 556 U.S. 662 (2009):

> To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to "state a

6

claim to relief that is plausible on its face.  A claim has
facial plausibility when the plaintiff pleads factual
content that allows the court to draw a reasonable
inference that the defendant is liable for the misconduct
alleged.  the plausibility standard is not akin to a
"probability requirement," but it asks for more than a
sheer possibility that a defendant has acted unlawfully.
Where a complaint pleads facts that are "merely
consistent with" a defendant's liability, it "stops short of
the line between possibility and plausibility of
'entitlement to relief.'"

*Id.* at 678 (internal citations to *Twombly* omitted).  A plaintiff's factual allegations,

while "assumed to be true, must do more than create speculation or suspicion of a

legally cognizable cause of action; they must show *entitlement* to relief."  *LULAC*

*v. Bredesen*, 500 F.3d 523, 527 (6th Cir. 2007) (emphasis in original, citing

*Twombly*, 550 U.S. at 555).  Thus, "[t]o state a valid claim, a complaint must

contain either direct or inferential allegations respecting all the material elements to

sustain recovery under some viable theory."  *Bredesen*, 500 F.3d at 527 (citing

*Twombly*, 550 U.S. at 562).  While a "*pro se* complaint . . . must be held to less

stringent standards than formal pleadings drafted by lawyers," *Erickson v. Pardus*,

551 U.S. 89, 94 (2007), still under even this lenient standard *pro se* plaintiffs must

meet basic pleading requirements.  *Martin v. Overton*, 391 F.3d 710, 714 (6th Cir.

2004).  The leniency granted to *pro se* plaintiffs "does not require a court to

conjure allegations on a litigant's behalf" *id.* at 714 (internal quotation marks and

citation omitted), and the Court is not required to create a claim for the *pro se*

plaintiff.  *Clark v. Nat'l Travelers Life Ins. Co.*, 518 F.2d 1167, 1169 (6th Cir. 1975).  To command otherwise would require the "courts to explore exhaustively all potential claims of a *pro se* plaintiff, [and] would also transform the district court from its legitimate advisory role to the improper role of an advocate seeking out the strongest arguments and most successful strategies for a party."  *Beaudett v. City of Hampton*, 775 F.2d 1274, 1278 (4th Cir. 1985).

In ruling on a motion to dismiss, the Court "may consider only matters properly part of the complaint or pleadings" in deciding the merits of the motion. *Armengau v. Cline*, 7 Fed. Appx. 336, 344 (6th Cir. 2001) (citations omitted).  The Sixth Circuit "takes a liberal view of what matters fall within the pleadings for purposes of Rule 12(b)(6)."  *Id.*  Thus, the Court may consider the complaint as well as (1) documents that are referenced in the plaintiff's complaint or that are central to plaintiff's claims, (2) matters of which a court may take judicial notice, (3) documents that are a matter of public record, and (4) letters that constitute decisions of a government agency.  *Tellabs, Inc. v. Makor Issues & Rights, Ltd.*, 551 U.S. 308, 322-23 (2007); *see also Greenberg v. Life Ins. Co. of Va.*, 177 F.3d 507, 514 (6th Cir. 1999) (finding that documents attached to a motion to dismiss that are referred to in the complaint and central to the claim are deemed to form a part of the pleadings).  Where the claims rely on the existence of a written agreement, and plaintiff fails to attach the written instrument, "the defendant may

introduce the pertinent exhibit," which is then considered part of the pleadings.

*QQC, Inc. v. Hewlett-Packard Co.*, 258 F. Supp.2d 718, 721 (E.D. Mich. 2003).

"Otherwise a plaintiff with a legally deficient claim could survive a motion to

dismiss simply by failing to attach a dispositive document." *Weiner v. Klais &*

*Co., Inc.*, 108 F.3d 86, 89 (6th Cir. 1997).

## B.  Wrongful Foreclosure (Counts I and IV (MCL §§ 600.3204(1)(d) and (3), 600.3216))

Plaintiff alleges in her second amended complaint that defendants Chase and

Trott have not "presented evidence of a legal transfer of the Mortgage and Note or

an assignment of all rights and authority to execute the power of sale contained in

the mortgage" prior to the foreclosure.  (Dkt. 63, Count I).  Plaintiff concludes that

Chase and Trott therefore "have **no legal standing** to Foreclose on Plaintiff's

property."  (*Id.* (emphasis in original)).  Plaintiff further alleges this conduct

violates MCL §§ 600.3204(1)(d) and (3).  (*Id.* Count IV).

Defendant Chase argues in its motion to dismiss that it is plaintiff who lacks

standing to bring her claims against Chase because she failed to redeem the

Property prior to the expiration of the six-month redemption period following the

sheriff's sale, and thus she lost her right, title and interest in and to the Property.

Chase further argues that plaintiff fails to allege that she was prejudiced by Chase's

alleged failure to record its assignment of her mortgage prior to foreclosure, as

required to set aside the foreclosure sale.  Chase asserts that plaintiff's frequent

9

communications with Chase show that plaintiff was well aware that Chase was the servicer to whom her mortgage obligations were due, and that had plaintiff wanted to preserve her interest in the Property, she had one clear option: to redeem the Property following the sheriff's sale.  Thus, plaintiff lost her interest in the Property not because of Chase's alleged failure to record the assignment of the mortgage, but because she made no attempt to redeem the Property.  Thus, Chase contends, plaintiff cannot state a claim to set aside the sheriff's sale, and the Court should dismiss Counts I and IV of plaintiff's second amended complaint.

Plaintiff responds that Chase's alleged failure to record the mortgage assignment prior to foreclosure, as required by MCL § 600.3204(3), renders the foreclosure and sale of plaintiff's Property voidable.[4]  Plaintiff contends that she filed this lawsuit three days before the expiration of the six-month statutory

---

[4] Plaintiff also claims that Chase cannot foreclose the Mortgage because it did not actually acquire any interest in her Mortgage and Note, relying on deposition testimony of Lawrence Nardi, an apparent Chase representative in a separate lawsuit filed in another state, stating that there was not a schedule of WaMu mortgage loans evidencing the specific loans purchased by Chase from the FDIC.  Plaintiff avers, based on this testimony, that an assignment of a WaMu loan to Chase would be "suspect at best."  (Dkt. 110).  However, the undersigned finds that this deposition testimony is outside the pleadings because it is not referred to in the second amended complaint or "central to her claim," and thus it will not be considered in this report and recommendation.  In any event, the deposition testimony would not change the analysis of Chase's motion to dismiss for the reasons stated in Chase's reply brief: (1) under the express terms of the Purchase Agreement, Chase purchased "all right, title, and interests of the Receiver in and to all assets (real, personal and mixed, wherever located and however acquired)," subject to certain exclusions which do not apply here, and neither the Purchase Agreement nor any other authority requires each specific WaMu asset to be listed in chart form in order for Chase's purchase to be effective; and (2) even if Chase had no ownership interest in plaintiff's mortgage or note, Chase's role as the servicer (which plaintiff admits) would still entitle it to foreclose under Michigan law, MCL § 600.3204(1)(d).  (Dkt. 112).

redemption period, and thus asserts she did not lose standing to contest the

foreclosure and sale of the Property.  Plaintiff further argues that Chase's failure to

follow Michigan foreclosure laws and procedure (MCL §§ 600.3204(1)(d) and

(3)), and the foreclosure and sale of the Property, shows that she was prejudiced.

The undersigned begins this analysis by summarizing relevant Michigan

foreclosure law.  Foreclosure by advertisement, such as the foreclosure at issue in

this case, as well as the rights of both the mortgagor and mortgagee after the

foreclosure sale has occurred, are governed by Michigan statutory law.  *See Conlin*

*v. Mortgage Elec. Registration Sys., Inc.*, 714 F.3d 355, 359 (6th Cir. 2013)

(applying Michigan law); *see also Brewington v. Nationstar Mortg., LLC*, 2013

WL 4009160, at *5 (E.D. Mich. Aug. 5, 2013) ("The statute not only governs the

process for foreclosure, but also the parties' rights subsequent to the sale of the

property.").  Pursuant to Michigan law, a mortgagor has six months from the date

of the sheriff's sale to redeem the property.  MCL § 600.3204(8).  If the mortgagor

fails to redeem the property before the redemption period expires, the mortgagor's

"rights, title, and interest in and to the property" are extinguished, *Piotrowski v.*

*State Land Office Bd.*, 302 Mich. 179; 4 N.W.2d 514, 517 (1942), and the sheriff's

deed 'become[s] operative, and [ ] vest[s] in the grantee named therein . . . all the

right, title, and interest [ ] the mortgagor had[.]" MCL § 600.3236.  This rule of

law–holding that absolute title vests in the purchaser at the foreclosure sale upon

11

expiration of the redemption period–has been applied consistently by state and federal courts alike to bar former owners from making any claims with respect to the foreclosed property after the statutory redemption period has lapsed. *See e.g., Conlin*, 714 F.3d at 359; *Piotrowski*, 302 Mich. at 187; 4 N.W.2d 514 (1942).

There is, however, one caveat to the general rule described above. Once a foreclosure sale has taken place and the redemption period has run, a court may allow "an equitable extension of the period to redeem" if a plaintiff makes "a clear showing of fraud, or irregularity[.]" *Conlin*, 714 F.3d at 359; *Freeman v. Wozniak*, 241 Mich. App. 633, 637; 617 N.W.2d 784 (2000) ("[I]n the absence of fraud, accident or mistake, the possibility of injustice is not enough to tamper with the strict statutory requirements.") (citation omitted). However, "[i]t is clear that not just any type of fraud will suffice. Rather, '[t]he misconduct must relate to the foreclosure procedure itself.'" *Conlin*, 714 F.3d at 360 (quoting *El Seblani v. IndyMac Mortg. Servs.*, 510 Fed. Appx. 425, 429 (6th Cir. 2013)). If a plaintiff seeking to set aside the sheriff's sale demonstrates fraud or irregularity in connection with the foreclosure procedure, the result is "a foreclosure that is voidable, not void *ab initio*." *Kim v. JPMorgan Chase Bank, N.A.*, 493 Mich. 98, 115; 825 N.W.2d 329 (2012). Therefore, in order "to set aside the foreclosure sale, plaintiffs must show that they were prejudiced by defendant's failure to comply" with Michigan's foreclosure by advertisement statute. *Id.* (holding that defects

12

under section 3204 are only actionable on a showing of prejudice). "To demonstrate such prejudice, [plaintiffs] must show that they would have been in a better position to preserve their interest in the property absent defendant's noncompliance with the statute." *Id.* at 115-16 (footnote omitted).

Because the redemption period has expired in this case, the Court must assess whether plaintiff's second amended complaint states a claim upon which relief may be granted within the fraud or irregularity framework outlined above.[5] Plaintiff broadly alleges that Chase "knowingly, intentionally and willingly made and caused to be made misleading, materially false, fictitious, and fraudulent statements during the legal processing of this case and during the Feb. 8, 2011 Foreclosure Sale of Plaintiff's property." (Dkt. 63, Claim I, ¶ 1).[6] Plaintiff further

---

[5] Defendant Chase characterizes the failure of plaintiff to redeem the property prior to the expiration of the statutory redemption period as a loss of standing. (Dkt. 107, Pg ID 1739-41). In *Conlin*, the Sixth Circuit noted that while some courts conclude that plaintiffs lack Article III standing after the redemption period expires, others conclude that while plaintiffs have standing to bring their claims, the claims fail on the merits. *Conlin*, 714 F.3d at 359-60. The *Conlin* court however did not take the opportunity to finally resolve the standing/merits controversy, but instead noted "one thing is clear: a plaintiff-mortgagor must meet this 'high standard' [of showing fraud or irregularity in the foreclosure process] in order to have a foreclosure set aside after the lapse of the statutory redemption period." *Id.* The undersigned will proceed with a merits analysis of plaintiff's claims. *See Carmack v. Bank of New York Mellon*, — Fed. Appx. —, 2013 WL 4529871, at *2 n.2 (6th Cir. Aug. 27, 2013) ("To the extent courts have referred to a plaintiff's failure to meet this redemption standard as one of standing, it is limited to standing under Michigan law, not Article III.") (citations omitted)

[6] Plaintiff also asserts that she did not lose "standing" to challenge the foreclosure because she filed her lawsuit three days prior to the expiration of the redemption period. (Dkt. 110, Pg ID 1775-76). However, as Chase correctly states, Michigan law is well-settled that the filing of a lawsuit before the expiration of the relevant redemption period does not toll the redemption period or otherwise prevent full title to the Property from vesting in the sheriff's sale purchaser. *See Overton v. Mortg. Elec. Registration Sys.*, 2009 WL 1507342, at *1 (Mich. Ct.

asserts that Chase "either directly or indirectly committed bank fraud and fraud in fact um [sic] against Plaintiff when they wrongfully foreclosed on her property **without** legal authority to enforce the power of sale with the mortgage instrument." (*Id.* Claim IV). To the extent plaintiff is attempting to plead fraud, her pleadings are insufficient as a matter of law to state a claim for fraud. It is well-settled that in order for a plaintiff to state a claim for fraud, plaintiff "must state with particularity the circumstances constituting fraud," Fed. R. Civ. P. 9(b), and "must at a minimum allege the time, place and contents of the misrepresentation(s) upon which he relied," *Bender v. Southland Corp.*, 749 F.2d 1205, 1216 (6th Cir. 1984), as well as the identity of the person who made the alleged misrepresentation. *Hoover v. Langston Equip. Assoc., Inc.*, 958 F.2d 742, 745 (6th Cir. 1992). "The bar for pleading fraud to set aside a foreclosure sale is extremely high." *See Colbert v. Federal Nat'l Mortg. Ass'n*, 2013 WL 1629305, at *11 (E.D. Mich. Apr. 16, 2013) (citations omitted). Here, plaintiff's second amended complaint is devoid of allegations of who made the alleged false representation, when that statement was made, the content and nature of the alleged misrepresentation, and that plaintiff acted in reliance on that alleged misrepresentation to her detriment. Accordingly, plaintiff's second amended

---

App. May 28, 2009); *see also Brewington*, 2013 WL 4009160, at *5 ("Michigan law is clear that the mere filing of a lawsuit does not toll the statutory redemption period.").

complaint fails to state a claim for fraud sufficient to set aside the foreclosure.

Plaintiff also argues that Chase failed to record the assignment of the Mortgage prior to the foreclosure, and thus Chase failed to comply with the Michigan foreclosure statute, MCL 600.3204(1)(d) and (3). (Dkt. 63). The Michigan Supreme Court recently declared in *Kim* that a defect in the Michigan statutory foreclosure proceedings renders the foreclosure sale voidable, not void *ab initio*, and that such defects are actionable only upon a showing of prejudice, i.e., a showing that the mortgagor would have been in a better position had the defect not occurred. *Kim*, 493 Mich. at 115. Thus, plaintiff here must show that she was prejudiced by Chase's alleged failure to comply with MCL § 600.3204. *Kim*, 493 Mich. at 115.

Plaintiff, however, has wholly failed to allege sufficient facts that she was prejudiced by defendant Chase's alleged failure to comply with Michigan's statutory scheme regulating foreclosures by advertisement. Plaintiff admits that she received notice of foreclosure from defendant Trott in November 2010 that her Mortgage was in default for non-payment and advising her on the procedures necessary to obtain a loan modification, posting of notice for foreclosure and sheriff's sale, and notice of the statutory six-month redemption period. (Dkt. 63, Ex. F, G, H, O, P). Plaintiff does not allege that she attempted to redeem the Property prior to the expiration of the statutory redemption period and she does not

15

point to any allegations of prejudice in her second amended complaint. Plaintiff

instead simply argues in response to Chase's motion to dismiss that Chase's

alleged "failure to follow Michigan Foreclosure Laws and Procedures in the

foreclosure and sale of Plaintiff's property on February 8, 2011 shows that she was

prejudiced[.]" (Dkt. 110, Pg ID 1777). This circular claim of prejudice is wholly

inadequate to survive a motion to dismiss. *See e.g., Grayer v. JPMorgan Chase

Bank Nat'l Ass'n*, 2013 WL 4414867 (E.D. Mich. Aug. 15, 2013) (plaintiff's

allegations that they will lose their rights to the property "is not the type of

prejudice *Kim* contemplates as this is precisely the result intended by Michigan's

foreclosure by advertisement statute" and "Plaintiffs do not dispute defaulting on

their obligations under the Note nor do they allege any effort to redeem the

Property").

 The Sixth Circuit Court of Appeals has recently rejected a similar argument

to the one plaintiff makes here. In *Conlin*, the Sixth Circuit held that even had the

assignment to the foreclosing bank been invalid, thereby causing a defect in the

foreclosure process, the plaintiff still would not have been able to show sufficient

prejudice. *See Conlin*, 714 F.3d at 361-62. The Court reasoned that the plaintiff

there had not shown that he would: (1) be subject to liability to anyone other than

the foreclosing bank; (2) have been in any better position to keep the property

absent the defect; and (3) be prejudiced in any other way. *Id.* at 362. This is also

16

the case for plaintiff here–she has not shown that she would be subject to liability to anyone else, that she would be in a better position to keep the property absent the alleged defect or that she would be prejudiced in any other way.  Simply put, plaintiff has not alleged that any prejudice results from the alleged violations of 3204.[7]  Accordingly, plaintiff's claims of wrongful foreclosure in Counts I and IV should be dismissed with prejudice.[8]

---

[7] And, to the extent plaintiff claims that Chase is not the owner of the indebtedness and thus did not have the power to conduct the foreclosure sale, that argument fails as it has been repeatedly rejected by Michigan state and federal courts.  *See Pace v. Bank of America, N.A.*, 2012 WL 5929931, at *2 (E.D. Mich. Nov. 27, 2012) ("Bank of America was the record-holder of the mortgage and thus had the authority to foreclose by advertisement under M.C.L. 600.3204.") (citing *Residential Funding LLC v. Saurman*, 490 Mich. 909, 910; 805 N.W.2d 183 (2011); *Everbank v. Zeer*, 2012 WL 1890184 (Mich App. May 24, 2012); *Hargrow v. Wells Fargo Bank, N.A.*, 2012 WL 2552805, at *3 (6th Cir. July 3, 2012) (record-holder of mortgage has right to foreclose by advertisement under Michigan law)).

[8] Defendant Chase also sought dismissal of plaintiff's second amended complaint on the ground that plaintiff is guilty of laches.  (Dkt. 107, Pg ID 1741-42).  "The equitable doctrine of laches bars an action when the party commencing a cause of action has delayed bringing suit when practicable without excuse or explanation and the delay would result in prejudice to the opposing party due to a change in a material circumstance."  *Edmonds v. Wells Fargo Del. Trust Co.*, 2013 WL 393239, at *3 (E.D. Mich. Jan. 31, 2013) (citing *Wayne Cnty. v. Wayne Cnty. Ret. Comm'n*, 267 Mich. App. 230; 704 N.W.2d 117 (2005)).  This Court and the Michigan Court of Appeals have found that the doctrine applies in the context of foreclosure proceedings, including situations where the plaintiff filed a complaint near the end of the redemption period.  *See Edmonds*, 2013 WL 393239; *Chalmers v. JPMorgan Chase Bank, NA*, 2012 WL 4839861, at *4 (E.D. Mich. Oct. 11, 2012); *Jackson Inv. Corp. v. Pittsfield Products, Inc.*, 162 Mich. App. 750; 413 N.W.2d 99 (1987).  Here, plaintiff asserts that Chase admits that plaintiff was in frequent communication with Chase before and during the foreclosure process, and thus argues that she is not guilty of laches.  In light of these allegations, and as Chase alleges no prejudice from plaintiff's delay in filing her complaint until three days before the expiration of the statutory redemption period, the undersigned does not recommend granting defendant's motion to dismiss based on the laches doctrine.  *See Chalmers*, 2012 WL 4839861, at *4 (finding plaintiff "did not unreasonably delay in bringing the suit in light of [her] allegations in the Complaint that she was attempting to resolve the payment issue with [GMAC].").

17

### C.   Plaintiff's RESPA Claim (Count II)

Plaintiff alleges in Count II of her second amended complaint that Chase violated the Real Estate Settlement Procedures Act ("RESPA") based on Chase's alleged failure to respond to plaintiff's "qualified written requests" ("QWRs") to Chase on May 21, 2010 and July 30, 2010.  (Dkt. 63, Count II).  The undersigned notes, however, that plaintiff acknowledges in her second amended complaint that Chase did respond to her letters on June 7, 2010, July 1, 2010, and August 26, 2010.  (*Id.* § V ¶¶ 7-12 & Exs. A-2, B & D).  Plaintiff makes the conclusory allegation that "[d]efendants['] failure to respond to Plaintiff's R.E.S.P.A. constitute a violation of 12 USC 2607(b)."  (Dkt. 63, Count II).  The undersigned notes that § 2607 addresses the prohibition against kickbacks and unearned fees, and subsection (b) addresses splitting charges.  Plaintiff, however, has pleaded no facts to support a violation of § 2607(b).  Although the leniency granted to *pro se* plaintiffs "does not require a court to conjure allegations on a litigant's behalf," *Martin v. Overton*, 391 F.3d 710, 714 (6th Cir. 2004), to the extent plaintiff is attempting to state a claim under § 2605(e), that section provides that following receipt of an inquiry, the servicer shall conduct an investigation and then provide the borrower with the information requested, or an explanation of why the requested information is unavailable or cannot be provided by the servicer.  12 U.S.C. § 2605(e)(2)(C)(I).

Chase argues that plaintiff concedes that Chase responded to her letters, which she alleges are QWRs, but provides no support for her position that Chase's responses were deficient, and thus fails to state a claim for a violation of RESPA. Chase further argues that plaintiff fails to allege that she sustained actual damages as a result of defendants' allegedly deficient responses, as required to state a RESPA claim.  (Dkt. 107).  Plaintiff failed to address her RESPA claim in any of her three responsive briefs.

A QWR is a "written correspondence" that "includes, or otherwise enables the servicer to identify, the name and account of the borrower and [ ] includes a statement of the reasons for the belief of the borrower [ ] . . . that the account is in error or provides sufficient detail to the servicer regarding other information sought by the borrower."  12 U.S.C. § 2605(e)(1)(B).  Section 2605 imposes duties to respond to a QWR from a borrower.  12 U.S.C. § 2605(e)(1)(A).  Specifically, the statute provides that "[n]o later than 60 days . . . after the receipt from any borrower of any [QWR]" and "after conducting an investigation," the servicer must "provide the borrower with a written explanation or clarification that includes . . . a statement of the reasons for which the servicer believes the account of the borrower is correct as determined by the servicer," and "information requested by the borrower or an explanation of why the information requested is unavailable or cannot be obtained by the servicer," and "the name and telephone number of an

individual employed by . . . the servicer who can provide assistance to the borrower." *Id.*

Here, plaintiff's second amended complaint alleges that she sent QWRs to Chase on May 21, 2010 and July 30, 2010 (although the complaint fails to attach a copy of the May 21, 2010 letter as an exhibit) and that Chase failed to respond (although plaintiff's second amended complaint acknowledges that Chase did respond on June 7, 2010, July 1, 2010, and August 26, 2010). (Dkt. 63, § V ¶¶ 7-12 & Count II). However, plaintiff's second amended complaint fails to contain any factual allegations that Chase's responses were legally deficient. "Courts that have addressed the adequacy of pleading RESPA claims have repeatedly held that a plaintiff cannot maintain an action under RESPA by merely alleging that they sent a QWR and defendant failed to respond." *See Brown v. Federal Nat'l Mortg. Ass'n*, 2013 WL 4500569, at *4-5 (W.D. Tenn. Aug. 19, 2013) (citing, *e.g., Boston v. Ocwen Loan Servicing, LLC*, 2013 WL 122151, at *13 (W.D.N.C. Jan. 9, 2013) (holding that conclusory allegations that defendant "failed to properly and timely respond" to two QWRs is "too threadbare" of an allegation to state a RESPA claim); *Jensen v. Quality Loan Serv. Corp.*, 702 F. Supp.2d 1183, 1196 (E.D. Cal. 2010) (holding that a conclusory allegation that the correspondence was a QWR is insufficient to state a claim under *Twombly*)).

Even treating all well–pleaded allegations in the second amended complaint

as true, the complaint fails to allege a legally sufficient claim for a violation of

§ 2605.  The record reflects that Chase did in fact respond to plaintiff's QWRs and

has fully complied with the statute.  Chase timely responded to plaintiff's QWRs

and provided a summary of plaintiff's loan, a statement that Chase believes the

account of the borrower is correct, the name and telephone number of a department

that can provide assistance to plaintiff, numerous documents and records related to

the servicing of plaintiff's loan, and an explanation of why much of the

information requested is unavailable or cannot be obtained by the servicer.  (Dkt.

63, Exs. A2, B, D).  Thus, Chase appears to have fully complied with the statute's

requirements and plaintiff has failed to state a claim for a RESPA violation.

Plaintiff simply provides no further factual content to support her claim that

Chase's responses were inadequate, and her RESPA claim should be dismissed.

*See Mekani v. Homecoming Fin., LLC*, 752 F.Supp.2d 785, 795 (E.D. Mich. 2010)

(plaintiff's complaint failed to state a RESPA claim because "Plaintiff has not

provided the factual content to plausibly suggest, as *Twombly* requires, that

Defendant's responses were somehow inadequate); *Roller v. Litton Loan Servicing*,

2011 WL 2490597, at *5 (E.D. Mich. June 21, 2011) (dismissing RESPA claim

because plaintiff only alleged that defendant failed to provide the information

requested, but failed to allege *how* defendant's responses were legally insufficient,

as required to state a claim under § 2605(e)); *Thomas v. Trott & Trott PC*, 2011

WL 576666, at *8 (E.D. Mich. Feb. 9, 2011) (plaintiffs failed to plead a plausible RESPA claim because they completely failed to allege how defendant's response was inadequate, but merely state that defendant failed to "forward the requested information in Plaintiff's QWR letter as mandated by the Act, and has failed to answer Plaintiffs' questions and concerns").

In addition, even if plaintiff had adequately plead that Chase failed to adequately respond to the QWRs as required, the undersigned finds that plaintiff has not adequately alleged how the purported RESPA violation caused the damages she seeks.  A plaintiff must plead actual damages as well as a causal link between the alleged RESPA violation and her injuries to recover for a violation of § 2605.  *See Mekani*, 752 F.Supp.2d at 795-96 (noting that plaintiffs must establish causation between RESPA violation and the damages claimed); *see also Hintz v. JPMorgan Chase Bank, N.A.*, 686 F.3d 505, 510-11 (8th Cir. 2012) (RESPA limits individual to actual damages caused by violation of statute); *Ford v. New Century Mortg. Corp.*, 797 F. Supp.2d 862, 870 (S.D. Ohio 2011).  Conclusory allegations of actual damages are not sufficient.  *Amaral v. Wachovia Mortg. Corp.*, 692 F. Supp.2d 1226, 1232 (E.D. Cal. 2010).  Plaintiff here merely alleges that "[a]s a result of [defendants'] acts, Plaintiff and Wendell Mason (her husband) have incurred actual damages consisting of emotional distress, nervousness, grief, embarrassment, lost [sic] of sleep, anxiety, worry, mortification, shock,

22

humiliation, indignity, pain and suffering, monetary damages, and loss of our

personal residence and serious health conditions centered around stressful daily life

conditions.  *All caused by the fraudulent foreclosure sale of our home*."  (Dkt. 63,

Count II (emphasis added)).  These damages allegations are not specific to the

alleged RESPA violation, but are essentially the same damages alleged for every

cause of action alleged in plaintiff's second amended complaint.  (*See id.*).  These

conclusory allegations are without any supporting facts regarding how she was

damaged by the alleged failure to respond to the alleged QWRs, as opposed to the

foreclosure process itself, and thus are insufficient to establish a violation of the

RESPA.  *See Tsakanikas v. JP Morgan Chase Bank N.A.*, 2012 WL 6042836, at *4

(S.D. Ohio Dec. 4, 2012) (holding plaintiffs failed to allege facts linking their

anxiety and emotional distress to the alleged deficiencies in defendant's response

to the QWR because they alleged anxiety and emotional distress was due to the

possibility of foreclosure, which was the result of failure to comply with the loan

terms, rather than defendant's alleged RESPA violation); *see also Lawther v.

Onewest Bank*, 2010 WL 4936797, at *7 (N.D. Cal. Nov. 30, 2010) (dismissing

plaintiff's RESPA claim because it "remain[ed] unexplained . . . how the QWR

failure itself is causally connected to the claimed distress of [plaintiff] or his

family").  Therefore, plaintiff's RESPA claim against Chase in Count II of her

second amended complaint should be dismissed with prejudice.

### D.      Plaintiff's Claims under FDCPA (Count III)

Plaintiff alleges "[o]n December 31, 2010 Plaintiff sent a Notice of Dispute to Defendants [Chase and Trott]" and that she did not receive a response.  (Dkt. 63, V ¶¶ 23-25 & Count III).  Plaintiff then alleges that defendants "violated both the terms and spirit of section 1692 of The Fair Debt Collections Procedures Act" and "knowingly and intentionally ignored, dishonored and failed to provide verification/validation of the alleged debt as Plaintiff requested."  (Dkt. 63, Count III).[9]  Chase argues that plaintiff's FDCPA claim should be dismissed because this is "a quintessential conclusory allegation that provides no context, factual or otherwise, for the claim" as plaintiff "fails to allege how any action by either Chase or Trott constituted a failure to validate or verify her mortgage obligation."  Chase further argues that the FDCPA does not apply to creditors, like Chase in this case, who are attempting to collect their own debts.  (Dkt. 107).  Plaintiff failed to respond to Chase's arguments in her response briefs.

The provision of the FDCPA to which plaintiff refers–15 U.S.C.

_____

[9] Plaintiff also alleges that on May 21, 2010, she mailed a "RESPA QUALIFIED WRITTEN REQUEST COMPLAINT, DISPUTE OF DEBT & VALIDATION OF DEBT LETTER, and TILA REQUEST to Chase Home Finance, LLC," and that Chase Home Finance did not verify/validate the debt pursuant to the Fair Debt Collection Procedures Act as codified at 15 USC § 1692."  (*Id.* § V, ¶ 7).  As explained *supra*, this claim is contradicted by plaintiff in her pleading, as she subsequently pleaded that Chase did respond to her May 21, 2010 letter on June 7, 2010, informing her that "We are investigating your issues and will work to provide you with a complete and accurate response. . . ." and again responded on July 1, 2010 concerning mortgage loan service by Chase Home Finance, LLC and "informing Plaintiff that it was their position that she had undertaken a valid, binding and legally enforceable obligation to JP Morgan Chase."  (*Id.* ¶¶ 8-9 & Ex. B).

§ 1692–does not apply to creditors but rather to debt collectors.  *Montgomery v. Huntington Bank*, 346 F.3d 693, 698 (6th Cir. 2003); *see also Bridge v. Ocwen Fed. Bank, FSB*, 681 F.3d 355, 364 (6th Cir. 2012) ("As is plain from the statutory text, liability under the FDCPA attaches only to a defendant that qualifies as a 'debt collector,' which is a statutorily defined term.").  A prima facie FDCPA claim must allege facts showing:

> [(1)] The plaintiff is a natural person who is harmed by violations of the FDCPA, or is a "consumer" within the meaning of 15 U.S.C.A. §§ 1692a(3), 1692(d) for purposes of a cause of action, 15 U.S.C.A. § 1692c or 15 U.S.C.A. § 1692e(11); [(2)] The "debt" arises out of a transaction entered primarily for personal, family, or household purposes, 15 U.S.C.A. § 1692a(5); [(3)] The defendant collecting the debt is a "debt collector" within the meaning of 15 U.S.C.A. § 1692a(6); and [(4)] The defendant has violated, by act or omission, a provision of the FDCPA, 15 U.S.C.A. § 1692a-16920; 15 U.S.C.A. § 1692a; 15 U.S.C.A. § 1692k.

*Langley v. Chase Home Fin. LLC*, 2011 WL 1150772, at *5 (W.D. Mich. Mar. 11, 2011) (citing *Whittiker v. Deutsche Bank Nat'l Trust Co.*, 605 F. Supp.2d 914, 938-39 (N.D. Ohio 2009) ("The absence of any one of the four essential elements is fatal to a FDCPA lawsuit."), *adopted by* 2011 WL 1130926 (W.D. Mich. Mar. 28, 2011)).  The FDCPA was designed "to eliminate abusive debt collection practices by debt collectors, to insure that those debt collectors who refrain from using abusive debt collection practices are not competitively disadvantaged, and to promote consistent State action to protect consumers against debt collection

abuses." 15 U.S.C. § 1692. According to the FDCPA, a "debt collector" is

defined to include any person who "regularly collects . . . debts owed or due or

asserted to be owed or due another." 15 U.S.C. § 1692a(5), (6). A creditor is one

"who offers or extends credit creating a debt or to whom a debt is owed, but . . .

does not include any person to the extent that he receives an assignment or transfer

of a debt in default solely for the purpose of facilitating collection of such debt for

another." *Id.* § 1692a(4); *see also Perry v. Stewart Title Co.*, 756 F.2d 1197, 1208

(5th Cir. 1985) ("The legislative history of section 1692a(6) indicates conclusively

that a debt collector does not include the consumer's creditors, a mortgage

servicing company, or an assignee of a debt, as long as the debt was not in default

at the time it was assigned."). "[C]reditors, mortgagors, and mortgage servicing

companies are not debt collectors and are statutorily exempt from liability under

the FDCPA." *Mohlman v. Long Beach Mortg.*, 2013 WL 490112, at *4 (E.D.

Mich. Feb. 8, 2013) (quoting *Scott v. Wells Fargo Home Mortg., Inc.*, 326

F.Supp.2d 709, 718 (E.D. Va. 2003), *aff'd*, 67 Fed. Appx. 238 (4th Cir. 2003)).[10]

---

[10] The Sixth Circuit has acknowledged that "as to a specific debt, one cannot be both a 'creditor' and a 'debt collector,' as defined in the FDCPA, because those terms are mutually exclusive." *Bridge v. Ocwen Fed. Bank, FSB*, 681 F.3d 355, 359 (6th Cir. 2012) (citations omitted). Thus, "[f]or an entity that did not originate the debt in question but acquired it and attempts to collect on it, that entity is either a creditor or a debt collector depending on the default status of the debt at the time it was acquired. *Id.* "In other words, the Act treats assignees as debt collectors if the debt sought to be collected was in default when acquired by the assignee, and as creditors if it was not." *Schlosser v. Fairbanks Capital Corp.*, 323 F.3d 534, 536 (7th Cir. 2003). In this case, Chase acquired the mortgage debt at issue through the Purchase Agreement dated September 25, 2008 (Dkt. 24-6), well before the debt went into default in 2010. (Dkt. 63, Ex. F).

Even if plaintiff pleaded sufficient facts to otherwise support a claim under the FDCPA, this claim would still fail because it does not allege that Chase is a "debt collector" for purposes of her FDCPA claim. A plaintiff cannot plead mere conclusions, but must "plead [ ] factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 678. Plaintiff here generally alleges that Chase was attempting to collect its own asserted debt when it brought the foreclosure action. "That the [second amended] complaint denies that [Chase] actually held the mortgage note does not take [Chase] outside the definition of a creditor. Under Sixth Circuit case law, the creditor exclusion clause extends to those who attempt to collect a debt that they assert is owed to them." *King v. CitiMortgage, Inc.*, 2011 WL 2970915, at *10 (S.D. Ohio July 20, 2011) (citing *Montgomery v. Huntington Bank*, 346 F.3d 693, 699 (6th Cir. 2003) ("To this, the federal courts are in agreement: A bank that is a creditor is not a debt collector for the purposes of the FDCPA and creditors are not subject to the FDCPA when collecting their accounts.") (internal quotations marks omitted)). Plaintiff's second amended complaint therefore does not allege any facts showing that defendant Chase is a debt collector within the meaning of the FDCPA. Without any facts regarding how the FDCPA applies to defendant Chase, who likely would be considered a creditor under the FDCPA, plaintiff's FDCPA claim against Chase fails and should be dismissed. *See Finley v. Kondaur*

*Capital Corp.*, 909 F.Supp.2d 969, 978 (W.D. Tenn. 2012).

### E.    Plaintiff's Claims Under 18 U.S.C. §§ 242, 245, 42 U.S.C. § 1983, and 15 U.S.C. § 1611(1) (Count IV and V)

Plaintiff facially asserts claims for violations of several statutes: 18 U.S.C. §§ 242, 245, 42 U.S.C. § 1983, and 15 U.S.C. § 1611(1).  (Dkt. 63, Counts IV, V).  However, plaintiff fails to plead the elements of those alleged statutory violations or facts supporting a violation of any of the statutes.  Plaintiff instead generally continues to allege that Chase wrongfully foreclosed her mortgage prior to recording the assignment.  (*Id.*).  Plaintiff further alleges that defendants did not provide her notice that her property was going to be sold at a sheriff's sale, "[t]hereby, violating Plaintiff['s] constitutional rights of due process and equal protection of the law."  (*Id.*).   However, plaintiff's exhibits, attached to her complaint, show that plaintiff did receive notice of the foreclosure, posting of foreclosure sale, and sheriff's sale scheduled for January 4, 2011.  (*Id.* Exs. G, H, O ("On December 3, 2010 a notice was attached illegally to our front door stating that our property will be foreclosed by sale of the mortgaged premises . . . on January 4, 2011.")).  For the reasons set forth below, plaintiff's statutory claims in Counts IV and V fail to state a claim and should be dismissed.

First, 18 U.S.C. §§ 242 and 245 are federal criminal statutes, and federal criminal statutes do not create private rights of action unless Congress expressly so provides.  There is no private civil right of action under either of these statutes.

*See Mallory-Bey v. Novastar Mortg., Inc.*, 2008 WL 5212726, at \*2 (E.D. Mich. Dec. 12, 2008) (dismissing claims asserted under 18 U.S.C. §§ 241 and 242 because plaintiff lacks standing to initiate criminal charges against defendant) (citing *Cok v. Cosentino*, 876 F.2d 1, 2 (1st Cir. 1989); *Bybee v. Pirtle*, 1996 WL 596458 (6th Cir. Oct. 16, 1996)); *see also Gray v. Michigan Dep't of Human Servs.*, 2010 WL 1755055, at \*3 (E.D. Mich. Apr. 22, 2010) (18 U.S.C. §§ 241, 242 and 245 are federal criminal statutes which do not provide for private civil causes of action), *adopted by* 2010 WL 1755052 (E.D. Mich. Apr. 30, 2010).

Second, even liberally construed, plaintiff's second amended complaint fails to state a claim under § 1983 for violation of her due process rights or equal protection. A party may sue under 42 U.S.C. § 1983 for deprivation of rights, privileges, or immunities secured by the Constitution or laws of the United States, but to state a plausible claim under § 1983, the plaintiff must allege that the defendant acted under color of state law. *Dennis v. Sparks*, 449 U.S. 24, 27 91980). In this case, Chase is a private party and there is no basis in the second amended complaint for inferring that Chase's conduct could be attributed to the state. Accordingly, plaintiff's § 1983 claim should be dismissed. *See Wellman v. PNC Bank*, 508 Fed. Appx. 440, 442 (6th Cir. 2012) (district court properly held bank was entitled to dismissal because it was not a state actor for purposes of § 1983); *see also Hughley v. Ocwen Loan Servicing, LLC*, 2013 WL 4782337, at

*3 (N.D. Ohio Aug. 28, 2013) (dismissing plaintiff's § 1983 claim against Ocwen because it was not a state actor).

Third, like 18 U.S.C. §§ 241 and 242, 15 U.S.C. § 1611 provides criminal penalties for certain violations of the Truth in Lending Act ("TILA") and does not provide a private civil right of action. *Vrabel v. JP Morgan Chase Bank, N.A.*, 2009 WL 2421856, at *2 (N.D. Cal. Aug. 6, 2009). Accordingly, plaintiff's claims under that statute should be dismissed as well.

Finally, reading plaintiff's *pro se* second amended complaint liberally, to the extent plaintiff is seeking to recover civil penalties available for an alleged violation of TILA under 15 U.S.C. § 1640(a), rather than § 1611, plaintiff's claim would still fail. In addition to imposing criminal liability on persons who wilfully and knowingly violate the statute (§ 1611), and empowering the Federal Trade Commission to enforce its provisions (§ 1607(c)), the TILA also creates a private cause of action for actual and statutory damages for certain disclosure violations. 15 U.S.C. § 1640(a). TILA "requires creditors . . . to provide borrowers with clear and accurate disclosures of [the] terms [of their loan, including] . . . finance charges, annual percentage rates of interest, and the borrower's rights." *Beach v. Ocwen Fed. Bank*, 523 U.S. 410, 412 (1998) (citing 15 U.S.C. §§ 1631, 1632, 1635, 1638)). Plaintiff's allegations in Count V of her second amended complaint fail to allege that Chase was a creditor under TILA or that Chase failed to make

any required disclosures, but rather generally allege, as before, that Chase

wrongfully foreclosed on the Property without possessing the original Mortgage

and Note signed by plaintiff and without perfecting the chain of title.  (Dkt. 63,

Count V).  Plaintiff also alleges that Chase "constructed and presented materially

false, factitious, and fraudulent Foreclosure Sale documents to the Special Deputy

Sheriff Thomas Rabette at the February 8, 2011 Foreclosure Sale of Plaintiff's

property."  (Dkt. 63, Count V).  These allegations about the sheriff's sale have no

relevance to a TILA claim, which is directed at requiring creditors to provide clear

and accurate credit terms to consumers.  Thus, even under a liberal reading of

plaintiff's second amended complaint, the undersigned finds that plaintiff has

failed to plead factual content sufficient to allow the court to draw the reasonable

inference that Chase violated TILA.  Therefore, plaintiff's claims in Counts IV and

V of her second amended complaint against Chase should be dismissed with

prejudice.

## IV.    RECOMMENDATION

For the reasons set forth above, the undersigned **RECOMMENDS** that

defendant Chases's motion to dismiss be **GRANTED** and that plaintiff's second

amended complaint against Chase be dismissed with prejudice.

The parties to this action may object to and seek review of this Report and

Recommendation, but are required to file any objections within 14 days of service,

31

as provided for in Federal Rule of Civil Procedure 72(b)(2) and Local Rule 72.1(d).  Failure to file specific objections constitutes a waiver of any further right of appeal.  *Thomas v. Arn*, 474 U.S. 140 (1985); *Howard v. Sec'y of Health and Human Servs.*, 932 F.2d 505 (6th Cir. 1981).  Filing objections that raise some issues but fail to raise others with specificity will not preserve all the objections a party might have to this Report and Recommendation.  *Willis v. Sec'y of Health and Human Servs.*, 931 F.2d 390, 401 (6th Cir. 1991); *Smith v. Detroit Fed'n of Teachers Local 231*, 829 F.2d 1370, 1373 (6th Cir. 1987).  Pursuant to Local Rule 72.1(d)(2), any objections must be served on this Magistrate Judge.

Any objections must be labeled as "Objection No. 1," "Objection No. 2," etc.  Any objection must recite precisely the provision of this Report and Recommendation to which it pertains.  Not later than 14 days after service of an objection, the opposing party may file a concise response proportionate to the objections in length and complexity.  Fed.R.Civ.P. 72(b)(2), Local Rule 72.1(d).  The response must specifically address each issue raised in the objections, in the same order, and labeled as "Response to Objection No. 1," "Response to Objection No. 2," etc.  If the Court determines that any objections are without merit, it may rule without awaiting the response.

Date: September 25, 2013                    s/Michael Hluchaniuk
                                            Michael Hluchaniuk
                                            United States Magistrate Judge

## <u>CERTIFICATE OF SERVICE</u>

     I certify that on <u>September 25, 2013</u>, I electronically filed the foregoing paper with the Clerk of the Court using the ECF system, which will send electronic notification to the following: <u>Thomas H. Trapnell,  Joseph H. Hickey, T.L. Summerville, Matthew B. Theunick and Edward A. Mahl</u>, and I certify that I have mailed by United States Postal Service the foregoing pleading to the following non-ECF participant(s), at the following address(es): <u>Mary F. Dunn Mason, 26233 Dundalk Street, Farmington Hills, MI 48334</u>.

<u>s/Tammy Hallwood</u>
Case Manager
(810) 341-7887
tammy_hallwood@mied.uscourts.gov
